UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN L. HOCHBERG,<br><br>Defendant. | Criminal No. 25cr10441<br><br>Violations:<br><br>Count One: Conspiracy to Defraud the United States<br>(18 U.S.C. § 371)<br><br>Count Two: Obstruction of Justice<br>(18 U.S.C. § 1503(a)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1. Defendant STEPHEN L. HOCHBERG lived in Marlborough, Massachusetts. Before 2008, he worked as a certified public accountant.

2. In 2008, HOCHBERG pleaded guilty to committing wire fraud and securities fraud. A federal judge in Massachusetts sentenced HOCHBERG to a term of imprisonment and ordered him to pay restitution of $1,791,500 (plus interest) to his victims.

3. HOCHBERG was released from prison on June 26, 2013. HOCHBERG's restitution order required him to make monthly payments to victims on a court-ordered payment plan. Based on his reported income and assets, his monthly restitution payment was $800. By November 2025, he had paid only about $117,465.40 in restitution, with about $2,049.483 in principal and interest outstanding and due to victims.

4. Charles D. Katz ("Katz") lived in Sudbury, Massachusetts and worked as a certified public accountant. Katz owned an accounting firm, CD Katz LLC ("CDK"), that provided financial advice and tax preparation services to businesses and individuals. KATZ also co-owned

1

a real estate investment and management company, Gebsco Realty Corporation ("Gebsco").

5. Starting no later than 2013, HOCHBERG worked at CDK as the Director of Corporate Services and purported to earn between $51,200 to $81,000 from 2013 to 2023.

6. Starting no later than 2013, HOCHBERG also worked for Gebsco as its Chief Operating Officer, but until 2023, HOCHBERG was not on Gebsco's payroll.

7. No later than 2014, HOCHBERG and Katz agreed that Gebsco and CDK would compensate HOCHBERG off the books by, among other things, paying members of HOCHBERG's family, providing rent-free housing to his family, paying for his children's college tuition, and paying for personal expenses that HOCHBERG and a family member charged on Gebsco's and CDK's corporate credit cards.

8. Katz hid HOCHBERG's true compensation by not reporting it on Gebsco's or CDK's tax filings or issuing any Form W-2 or Form 1099 to HOCHBERG that accurately recorded HOCHBERG's actual taxable compensation.

9. HOCHBERG hid his true compensation by filing false personal income tax returns and by providing false information about his employment and compensation to the United States Probation Office and to the Financial Litigation Unit of the United States Attorney's Office for the District of Massachusetts, which was responsible for collecting payments on HOCHBERG's restitution order.

10. Through this scheme, HOCHBERG and Katz avoided reporting to the IRS at least $1,668,487 in compensation to HOCHBERG. As a result, HOCHBERG and Katz did not pay income and employment taxes on HOCHBERG's true compensation and caused the IRS and the Commonwealth of Massachusetts to suffer tax losses of at least $835,105.

11. By hiding his true income, filing false tax returns, and providing false information

2

to the United States, HOCHBERG also willfully resisted the lawful court order to pay restitution to the victims of his wire fraud and securities fraud scheme and obstructed the administration of that restitution order by the United States Probation Office and the United States Attorney's Office.

### Obligations to the Internal Revenue Service

12. The IRS was a constituent agency of the United States Treasury Department and part of the Executive Branch of the United States Government. The IRS was responsible for administering and enforcing the tax laws of the United States, collecting taxes owed by its citizens and businesses to the Treasury of the United States, and providing refunds of overpaid taxes.

13. Domestic corporations generally were required to file annual income tax returns, regardless of whether they had any taxable income, either as S Corporations or C Corporations.

14. S Corporations were closely held companies that chose to be taxed under Subchapter S of Chapter 1 of the Internal Revenue Code. S Corporations were required to file annual United States Income Tax Returns for S Corporations Form 1120S ("Form 1120S") to report their annual gross receipts or sales, expenses, and resulting income or loss. Deductible expenses included, among other things, employee salaries and wages; pensions and profit-sharing plans; and employee benefit programs. S Corporations could elect to "pass through" any profits or losses to their shareholders for federal tax purposes. The tax laws required each shareholder of an S Corporation to include his share of the S Corporation's income or loss on his individual income tax return, Form 1040, using a "Schedule K-1" and to pay any tax due as a result.

15. The tax laws required C Corporations to file annual United States Corporations Income Tax Returns, Form 1120 ("Form 1120"), to report the income; deductions, gains, and losses from the companies' operations. Deductible expenses included, among other things, employee salaries and wages; pensions and profit-sharing plans; and employee benefit programs.

3

The IRS taxed C Corporations separately from the companies' owners.

16.     In all relevant years, CDK filed its taxes as a C Corporation using Form 1120. Gebsco filed its taxes as an C Corporation using Form 1120 in 2013, 2014, and 2015 and then as an S Corporation using Form 1120S from 2016 to present.

17.     Federal tax laws required businesses generally to withhold certain taxes from employees' paychecks and pay those taxes over to the IRS. These federal employment taxes consisted of federal income tax and Federal Insurance Contribution Act taxes ("FICA taxes").

18.     In general, an employer was required to deduct and withhold income tax on the amount of wages that it actually or constructively paid to its employees, and pay over those withholding taxes to the IRS.

19.     The FICA tax comprised two elements: Social Security taxes, which were used to fund retirement and disability benefits, and Medicare taxes, which were used to provide health and medical benefits for the aged and disabled. An employer had to deduct and withhold FICA taxes on the amount of wages that actually or constructively were paid to its employees, and pay over those FICA taxes to the IRS. An employer also was responsible for paying its own FICA taxes based on the wages paid to its employees. The employee portion of FICA taxes, along with federal withholding taxes, were collectively referred to as "Trust Fund Taxes." Trust Fund Taxes and the employer's matching FICA taxes were collectively referred to as "employment taxes."

20.     Federal tax law required employers to file Form 941s, Employers Federal Quarterly Tax Returns ("Form 941"), which employers used to report and pay all federal payroll taxes. Federal tax law required employers to file Form 941 four times per year, one for each quarter ending March 31, June 30, September 30, and December 31. An employer was required to pay over its payroll taxes to the IRS, in full, by the due date for the Form 941.

21. Section 7501 of the Internal Revenue Code provided that whenever any person was required to withhold or collect any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so withheld or collected was to be held in trust on behalf of the United States.

22. In addition, the tax laws required every employer to file and provide to its employees a United States Wage and Tax Statement, Form W-2 ("Form W-2"), to report, among other things, total wages, tips, and other compensation, including fringe benefits, and to report income tax withheld from the employee and paid to the IRS.

23. The tax laws also required every employer generally to file and provide a Form 1099 to any independent contractor to whom the employer paid more than $600.

24. Any individual who was employed in the United States and earned income during a calendar year in excess of a threshold amount was obligated to file with the IRS a United States Individual Income Tax Return, Form 1040 ("Form 1040"), for that calendar year and was required to report earnings recorded on Form W-2 and on Form 1099, in addition to other earnings.

25. All Forms 941, 1040, 1120, and 1120S required the filer to sign an attestation under penalty of perjury that the return and accompanying schedules were true, correct, and complete.

26. Katz was responsible for accurately collecting, accounting for, and paying taxes over to the IRS for himself, CDK, and Gebsco. He was also responsible for preparing, and causing to be prepared, payroll tax returns (Form 941) for CDK and Gebsco and for issuing Forms W-2 and 1099 for employees and independent contractors of both companies.

27. HOCHBERG was responsible for accurately reporting his taxable income to the IRS and paying all taxes due and owing.

<u>The Conspiracy</u>

28. From about 2015 to at least 2023, HOCHBERG and Katz agreed to defraud the United States through a scheme in which Katz paid HOCHBERG off the books for work at Gebsco, did not accurately report HOCHBERG's full compensation on CDK's 1040 Schedule C or Gebsco's Forms 1120 or 1120S or the companies' Forms 941 or on HOCHBERG's Form W-2 from CDK, and did not issue Forms 1099 to HOCHBERG's ex-wife or HOCHBERG's children for payments they received or that were made for their benefit in lieu of payroll payments to HOCHBERG.

<u>Objects and Purposes of the Conspiracy</u>

29. The object of the conspiracy was to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the IRS in the ascertainment, computation, assessment, and collection of revenue, that was: (1) income taxes, by filing false corporate and business (for Schedule C) income tax returns, which did not accurately report compensation paid to HOCHBERG; (2) federal payroll taxes, by filing false and fraudulent Employer's Quarterly Federal Tax Returns, which underreported the true number of employees and the true and correct wages paid to HOCHBERG and failed to pay over the appropriate taxes; and (3) income taxes, by issuing false Forms W-2 that HOCHBERG used to prepare fraudulent Form 1040s, all in violation of Title 26, United States Code, Sections 7201, 7202, and 7206.

30. The principal purpose of the conspiracy was to compensate HOCHBERG tax-free and therefore enrich HOCHBERG and to hide his true income, while lessening CDK's and Gebsco's tax obligations.

<u>Manner and Means of the Conspiracy</u>

31. Among the manner and means by which HOCHBERG and Katz carried out the

conspiracy were the following:

    a.    Buying a home for HOCHBERG's ex-wife to live in rent-free;

    b.    Paying home expenses for HOCHBERG's ex-wife;

    c.    Paying tuition and college-related expenses for HOCHBERG's children;

    d.    Paying HOCHBERG's ex-wife and daughter in lieu of paying HOCHBERG;

    e.    Paying personal expenses incurred by HOCHBERG and his ex-wife on Gebsco's and CDK's corporate credit cards;

    f.    Paying for HOCHBERG's personal driver;

    g.    Filing false Forms 941 for CDK and for Gebsco that did not accurately report HOCHBERG's compensation;

    h.    Filing false Forms 1040 Schedule C for CDK;

    i.    Filing false Forms 1120 for Gebsco that did not accurately report wage expenses;

    j.    Filing false Forms 1120S for Gebsco that did not accurately report wage expenses;

    k.    Issuing Forms W-2 to HOCHBERG that did not accurately report his earnings; and

    l.    Filing false Forms 1040 that did not accurately report HOCHBERG's earnings.

<u>Overt Acts in Furtherance of the Conspiracy</u>

32.    From in or about 2014 through in or about 2023, HOCHBERG and Katz committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

    a.    On or about January 22, 2015, Gebsco paid HOCHBERG's ex-wife $3,450;

    b.    On or about June 12, 2015, CDK paid HOCHBERG's daughter $595;

    c.    On or about November 17, 2015, Gebsco bought a house in Sudbury for $585,000 for HOCHBERG's ex-wife to live in rent-free;

d. On or about April 15, 2016, HOCHBERG filed a Form 1040 for the tax year 2015 that did not accurately report the income he received.

e. On or about December 23, 2016, HOCHBERG and Katz paid HOCHBERG's daughter $2,975, in increments of $595, out of five accounts, to conceal payments made on behalf of HOCHBERG and to avoid detection by the IRS on a Form 1099 required for payments over $600;

f. On or about January 26, 2016, Katz executed and filed a Form 1096, Annual Summary and Transmittal of United States Information Returns, for Gebsco for 2015 that falsely did not include HOCHBERG's true earnings;

g. On or about April 21, 2016, Gebsco paid HOCHBERG's ex-wife $2,950;

h. On or about March 6, 2017, Gebsco paid HOCHBERG's ex-wife $1,000;

i. On or about January 1, 2018, Katz and HOCHBERG created an agreement to sell the house in Sudbury, with profits to be for the benefit of HOCHBERG's ex-wife, with Gebsco increasing her profit margin by $2,500 per month for every month that HOCHBERG worked at Gebsco;

j. On or about January 3, 2018, HOCHBERG and Katz paid HOCHBERG's daughter $2,975 in increments of $595, out of five accounts, to conceal payments made on behalf of HOCHBERG and to avoid detection by the IRS on a Form 1099 required for payments over $600;

k. On or about January 17, 2018, Katz filed a Form 941 for Gebsco for the fourth quarter of 2017 that falsely did not report the accurate number of employees or any compensation to HOCHBERG and underreported Gebsco's employment tax liability;

8

l. On or about April 16, 2019, Katz filed a Form 941 for Gebsco for the first quarter of 2019 that falsely did not report the accurate number of employees or any compensation to HOCHBERG and underreported Gebsco's employment tax liability;

m. On or about September 16, 2019, Gebsco paid HOCHBERG's ex-wife $1,200;

n. On or about July 15, 2020, HOCHBERG and Katz paid HOCHBERG's daughter $1,190 in increments of $595, out of two accounts, to conceal payments made on behalf of HOCHBERG and to avoid detection by the IRS on a Form 1099 required for payments over $600;

o. On or about October 13, 2020, Katz filed a Form 941 for Gebsco for the third quarter of 2020 that falsely did not report the accurate number of employees or any compensation to HOCHBERG and underreported Gebsco's employment tax liability;

p. On or about January 13, 2021, HOCHBERG paid $2,713.80 from Gebsco to a Connecticut university for tuition for his son;

q. On or about April 20, 2021, Katz filed a Form 941 for Gebsco for the first quarter of 2021 that falsely did not report the accurate number of employees or any compensation to HOCHBERG and underreported Gebsco's employment tax liability;

r. On or about February 15, 2022, HOCHBERG paid $5,088 from Gebsco to a Connecticut university for tuition for his son;

s. On or about April 14, 2022, Katz filed a Form 941 for Gebsco for the first quarter of 2022 that falsely did not report the accurate number of employees or any

compensation to HOCHBERG and underreported Gebsco's employment tax liability;

t.   On or about July 15, 2023, HOCHBERG paid $3,309 from Gebsco to a Connecticut university for tuition for his son;

u.   On or about August 3, 2023, Gebsco paid HOCHBERG's ex-wife $1,000; and

v.   On or about October 12, 2023, Katz filed a Form 941 for Gebsco for the third quarter of 2023 that falsely did not report the accurate compensation to HOCHBERG and underreported Gebsco's employment tax liability.

### Obstruction of Justice and Contempt

33.   On June 13, 2008, HOCHBERG pleaded guilty to charges of wire fraud, in violation of Title 18, United States Code, Section 1343, and securities fraud, in violation of Title 15, United States Code, Section 78j(b) and 78ff, in the United States District Court for the District of Massachusetts. On October 16, 2008, a United States District Court Judge sentenced HOCHBERG for his crimes.

34.   At sentencing, the Court ordered HOCHBERG to pay $1,791,500 in restitution to his victims, on a court-ordered payment schedule. The court order further stated that, with respect to restitution, HOCHBERG had to "notify the court and United States [A]ttorney of material changes in economic circumstances."

35.   Shortly after his release from prison in 2013, HOCHBERG began paying $800 per month in restitution on a court-ordered payment plan.

36.   Thereafter, HOCHBERG reported his income to United States Probation and certified that the information he reported was true and correct.

37. For example, in about July 2013, shortly after being released from prison, HOCHBERG told United States Probation that his monthly income at CDK was $3,870 and that, with Social Security, this was his only income.

38. In about January 2016, HOCHBERG told United States Probation that his monthly income at CDK was $5,600 and that, with Social Security, this was his only income, even though, as he then knew, Katz and he had agreed that Katz would pay him significant compensation off the books.

39. On or about June 25, 2016, United States Probation stopped supervising HOCHBERG and transferred management of his restitution payments to the United States Attorney's Office, Financial Litigation Unit.

40. On or about August 5, 2016, HOCHBERG submitted a financial statement to the United States Attorney's Office, attesting to the truth of the financial information that he submitted and providing the United States Attorney's Office with his last three federal income tax returns.

41. In his financial statement, HOCHBERG falsely stated, among other things:

a. CDK was his only employer;

b. His income comprised only $2,800 biweekly from CDK and $2,380 from Social Security; and

c. He had not, in the previous five years, "received support of value greater than $1,000 per year in the form of free services, goods, or use of assets from any person or entity."

42. When he made those statements, he knew that he was receiving significant financial benefits from Katz that he was not disclosing to the United States Attorney's Office.

43. On or about November 23, 2016, in reliance on information that HOCHBERG provided, the United States Attorney's Office agree to continue HOCHBERG's existing $800 monthly restitution payments.

44. In support of his financial statement to the United States Attorney's Office, HOCHBERG submitted federal and state individual income tax returns, Form 1040, for tax years 2015, 2016, and 2017, all of which were false because they did not accurately report HOCHBERG's total compensation.

45. On or about April 18, 2025, HOCHBERG submitted a new financial statement to the United States Attorney's Office in which he falsely stated that he had been employed by Gebsco only in 2023, even though he knew that he had worked for the business since 2013 and had received at least $1,668,487 in compensation that he had never disclosed to the United States District Court or to the United States Attorney's Office.

46. On or about the same day, HOCHBERG proposed to the United States Attorney's Office that he continue to pay only $800 per month in restitution, given his purportedly limited resources and income.

<u>COUNT ONE</u>
Conspiracy to Defraud the United States
(18 U.S.C. § 371)

The United States Attorney charges:

47. The United States Attorney re-alleges and incorporates by reference paragraphs 1 to 46 of this Information.

48. From in or about 2014 through in or about 2023, in the District of Massachusetts, the defendant,

STEPHEN L. HOCHBERG,

conspired with Katz and others known to the United States Attorney to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful function of the Internal Revenue Service in the ascertainment, computation, assessment, and collection of the revenue, to wit: income tax and employment tax.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO
Obstruction of Justice
(18 U.S.C. § 1503(a))

The United States Attorney further charges:

49. The United States Attorney re-alleges and incorporates by reference paragraphs 1 to 46 of this Information.

50. From in or about 2013 through in or about 2023, in the District of Massachusetts, the defendant,

STEPHEN L. HOCHBERG,

did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due administration of justice, to wit:  administration of a lawful criminal restitution order to pay $1,791,500 by the United States Probation Office and the United States Attorney's Office, Financial Litigation Unit.

All in violation of Title 18, United States Code, Section 1503(a).

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:   /s/Kriss Basil
KRISS BASIL
Assistant United States Attorney